# CRESCENT CITY STOCK YARDS AND SLAUGHTER HOUSE CO. vs. BOSCH & MARTIN.

## Syllabus.

As a general rule the manager of a corporation has no authority to lease the property of the corporation unless such authority is conferred upon him by the charter or by the by-laws, or by resolution of the board of directors.

When parties agree to lease property with the intention of reducing the lease to writing, either party may recede before signing.

Judgment reversed.    Judgment in favor of plaintiff for possession.

Appeal from the 29th Judicial District Court for the Parish of St. Bernard, No. 989.    Honorable R. E. Hingle, Judge.

Fernando Estopinal, Conrad G. Collins, for plaintiff and appellant.

Oliver S. Livaudais, for defendant and appellee.

His Honor, CHARLES F. CLAIBORNE, rendered the opinion and decree of the Court, as follows:

This is an ejectment suit by a lessor against his lessee.

Plaintiff alleges that the defendants are occupying certain premises as its lessees by the month; that on January 31st, 1915, it gave them a notice to vacate, according to law, that they have failed to vacate, and it prays for citation and for judgment condemning them to vacate and to deliver possession to plaintiff.

The defendants swear that by a written contract they leased the said premises from the plaintiff for the period of one year beginning on October 1st, 1913, and ending

September 30th, 1914; that thirty days before the expiration of said lease they called upon H. B. Daboval, manager of said plaintiff, to enquire whether their lease would be renewed, and they were positively told by said manager that their lease would be renewed for another year on the same terms and conditions; that they have continued in the possession of said premises ever since, and have punctually paid the rent; that it was only after thy had written to plaintiff on October 8th, 1914, requesting a renewal of the lease in writing that they were notified that they must vacate due to repairs necessary to the building.

There was judgment for defendants and plaintiff has appealed.

We think the judgment must be reversed for the following reasons:

1st. There is no evidence that H. B. Daboval, manager, was authorized to lease the property. Defendant's original lease was signed by the president. There is nothing in plaintiff's constitution or by-laws conferring such power on the manager. Article V of the Constitution vests all the powers of the corporation in the board of directors, and Section V of the by-laws provides that the manager shall exercise a general management and control over the operations and affairs of the company subject to the supervision of the board of directors. Mr. Daboval testifies that he had no authority to renew the lease, that the board of directors granted the leases, and that he forwarded all applications to them.

2nd. But the contention of the defendants that Daboval renewed the lease with them is not supported by the evidence. He testifies that he always told them that

he did not think there would be any trouble in renewing the lease, but that it all depended upon Mr. DeBuy's report of the condition of the building; but he denied that he renewed the lease. The defendant, Bosch, swears that Daboval told him: "I will give you a new lease without any trouble." But later on he says: "Our lease was not renewed at all, but Mr. Daboval told us everything would be all right."

Mr. Martin testifies that Daboval said he would renew the lease, that they had no lease, but only the promise of one.

But it is evident that neither of the defendants believed that Daboval had renewed their lease. In a letter of October 9th, 1914, addressed to Mr. Daboval, they say: "Our business engagements for the future are based upon the tacit renewal of the lease brought about by our uninterrupted continued occupancy of the premises since the expiration of the old lease." They relied upon a renewal under the law, as they erroneously understood it to be, and not upon a renewal under contract. Again, in a letter of November 25, they say to Mr. Daboval: "Your letter failed to state whether we shall be given preference of occupancy of contemplated repaired building." When they are informed by a letter of Mr. Daboval that they will be given a preference under new conditions, when the building is repaired, they write to enquire what these new conditions will be, the terms of lease and price, before they will make a move. Nowhere do they mention the renewal of the lease they allege they have obtained from Daboval. All this leads us to conclude they had no faith themselves in their pretended renewed lease from Daboval, and that they did not set it up until they realized that their holding over until October 8th, did not renew their lease for one year.

3rd. But however this may be, it is evident from the testimony of the plaintiff and of the defendants that they contemplated that the lease, if any was agreed upon verbally, should be eventually reduced to writing. The law is well settled that under such circumstances, until the contract is reduced to writing, any of the parties thereto may withdraw his consent.

> 1 H. D., p. 1001, Paragraph 2, No. 1; 52 A., 424 (426).

It is therefore ordered that the judgment of the Court below be reversed, and it is now ordered that there be judgment in favor of plaintiff, the Crescent City Stock Yard and Slaughter House Company, Limited, condemning the defendants herein, Isidore Bosch and Adrien Martin to vacate the premises known as the Northwest corner of North Peters and Estaben Streets and to deliver possession of the same to plaintiff according to law and to pay all costs of suit in both Courts.

Opinion and decree, June 30th, 1915.

Rehearing refused, July 22, 1915.